UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Tampa Division)

YARLEY VASALLO,

      Plaintiff,

vs.

CHAD CHRONISTER, in his
official capacity as Sheriff of
Hillsborough County, Florida,

      Defendant.

_____/

### **VERIFIED COMPLAINT FOR DAMAGES**

Plaintiff, YARLEY VASALLO, by and through his undersigned counsel, hereby sues Defendant, CHAD CHRONISTER, in his official capacity as Sheriff of Hillsborough County, Florida, and states as follows:

### **INTRODUCTION**

1.    Deputy YARLEY VASALLO brings this action against CHAD CHRONISTER, in his official capacity as Sheriff of Hillsborough County, Florida, to remedy religious discrimination and retaliation he suffered in the workplace based on his Muslim religion and his repeated requests for religious accommodations that would allow him to grow his beard longer than is permitted under Hillsborough County Sheriff's Office ("HCSO") Standard Operating Procedure GEN 117.00 regarding Personal Appearance and Grooming. Accordingly, Plaintiff brings this action pursuant to Title VII of the Civil Rights Act

1

of 1964, as amended, 42 U.S.C. § 2000e-2, et seq. ("Title VII") and 42 U.S.C. § 1983.    By the filing of this action, Plaintiff seeks compensatory damages, declaratory and equitable relief, and an award of costs and attorneys' fees.

## JURISDICTION AND VENUE

2.    The Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

3.    Venue for this action properly lies in the Tampa Division of the United States District Court for the Middle District of Florida, because the unlawful employment practices were committed in Hillsborough County and all employment records relevant to such unlawful employment practices are maintained and administered within this judicial district.

## PARTIES

4.    Plaintiff, YARLEY VASALLO (hereafter "Plaintiff" or "VASALLO") is a citizen and resident of Polk County, Florida, over the age of 18 years, and otherwise *sui juris*.    VASALLO is, and was at all times material hereto, an "employee" of Defendant within the meaning of the Title VII based on his employment as Law Enforcement Deputy with HCSO since December 2022.

5.    VASALLO is protected by the anti-discrimination provisions of Title VII based on his religion (Islam).    Additionally, by requesting religious accommodations, complaining of discrimination in the workplace and filing

administrative charges of discrimination, VASALLO is among the classes of persons protected by the anti-retaliation provisions of Title VII.

6.    Defendant, CHAD CHRONISTER (hereafter "Defendant, "CHRONISTER" or "HCSO"), is the elected Sheriff of Hillsborough County, Florida and an "employer" as defined by Title VII.

7.    At all times relevant herein, Defendant CHRONISTER acted in his official capacity under color of law under 42 U.S.C. § 1983, and within his authority as an employee and/or agent of HCSO.

**COMPLIANCE WITH PROCEDURAL REQUIREMENTS**

8.    On or about June 2, 2025, VASALLO filed EEOC Charge No. 511-2013-0331 with the United States Equal Employment Opportunity Commission (EEOC) Tampa Field Office.   A copy of Plaintiff's EEOC Charge filed in Case No. 511-2025-03331 is attached hereto as Exhibit 1.

9.    On June 13, 2025, the EEOC issued a Dismissal and Notice of Rights on EEOC Charge No. 511-2025-03331.

10.    This lawsuit is being filed within 90 days of Plaintiff's receipt of the Dismissal and Notice of Rights from the EEOC. Therefore, all procedural requirements for the filing of Plaintiff's claims under Title VII have been met.

11.    Plaintiff has retained the undersigned attorneys to represent him in this action and is obligated to pay a reasonable fee for his attorney's services.

## FACTUAL ALLEGATIONS

12.    Plaintiff VASALLO was hired by HCSO as a Law Enforcement Deputy on or about December 12, 2022.

13.    Because Plaintiff is a practicing Muslim, prior to his first training shift with HCSO, he asked for a religious accommodation to keep a beard because the agency's grooming policy did not allow beards except in certain situations.  In response, Plaintiff was directed to shave his beard and advised that HCSO would decide whether a religious exception could be made once he was further into his training.  After VASALLO politely and respectfully told his recruiter that he would not be able to shave his beard due to his sincerely held Muslim faith and again requested accommodations before starting training he was screened and interviewed by a chaplain via phone about his religious beliefs and notified that the accommodation was granted before his  first day on the job.

14.    During the second or third week of his training, in late December 2022, Deputy VASALLO was summoned to the Training Sergeant's office where he was notified by Sergeant William Barnes that although his accommodation was initially approved, HCSO's grooming policy still restricted beards permitted for religious or medical reasons to 1/4 inch in length.  The accommodation that was offered still conflicted with his sincerely held religious beliefs as a Muslim, so Plaintiff respectfully acknowledged that he understood the policy and continued to

keep his beard neat and professional at approximately at a length of between ¾ of an inch to one inch, by using a beard trimmer and a ¾ inch guard.

15.    The HCSO Physical Appearance and Grooming policy in effect at the end of 2022 when Deputy VASALLO began his employment as a Law Enforcement Deputy required religious or medical accommodations to be requested again every six months.   In accordance with the policy, VASALLO submitted a memo to HCSO Chief Deputy Donna Luczynski on May 31, 2023 seeking to renew his religious accommodation for another six months.

16.    At some point after he renewed his request for religious accommodations, the HSCO grooming policy was superseded in the spring or summer of 2023 by Standard Operating Procedure Number GEN 117.00 Subject: Physical Appearance and Grooming (hereafter GEN 117.00), which was personally approved by Defendant CHRONISTER in his capacity as Sheriff of Hillsborough County, and remains in effect to this day.   *See* Exhibit 2, GEN 117.00 (rev. 9/23/24).

17.    The amended version of GEN 117.00 applies to "all Sheriff's Office Personnel," and allows "Sworn Male Deputies"  below the rank of Lieutenant to keep a beard so long as it is "continuous, neat, trimmed, and maintained at a length not to exceed one-fourth inch." *See* GEN 117.00, Section IV, Hairstyles/Facial Hair at A(1).  In addition to Deputies, male "Uniformed and Non-Uniformed Civilian Employees" of HCSO are also permitted to maintain "facial hair, such as sideburns,

mustaches, goatees, and beards" under GEN 117.00, but they are not subject to any stated limits on the length of their beards.    *See* GEN 117.00, Section IV, Hairstyles/Facial Hair at A(3).

18.    Although there is an express exception to the GEN 117.00 for "deputies assigned to undercover or other such special assignments," whose grooming standards are to be "established by the Division Commander in accordance with the needs and circumstances of the special duties to be performed," *see* GEN 117.00, Section E, the new SOP eliminated the exemption that existed under the former SOP for religious or medical reasons and makes clear that the new "restrictions also apply for all medical and religious reasons." *See* GEN 117.00, Section IV, A(1)(d).

19.    Despite the elimination of the religious exemption under GEN 117.00 as amended, Deputy VASALLO kept his beard at a length of between one and one-and-one-half inches, which was longer than permitted by GEN 117.00 but consistent with other male Law Enforcement Deputies with HCSO who had even longer beards irrespective of any religious or medical accommodations that he was aware of.  Based on Plaintiff's  overall experience with HCSO at that point, he reasonably concluded that ¼ inch length restriction of GEN 117.00 was not being actively or consistently enforced, if at all, so long as the individual kept his beard neat, groomed, and trimmed.

20.    In or about October 2023, Deputy VASALLO began to undertake a deeper study of his religion after his wife reverted to Islam. Plaintiff increased his study of the Holy Qur'an and became more active in religious and social events at their mosque. In or about January 2024, he began teaching classes for new Muslim reverts at the Islamic Center of Lakeland and at Masjid Al Mutakaber in Winter Haven, Florida and working closely with other Islamic leaders and scholars in his community.

21.    Through his personal experience of teaching Islam to others, VASALLO learned more about the Qur'an and the Hadith, which are the recorded sayings, actions, and silent approvals of the Prophet Muhammad (peace and blessings be upon him), and serve as the primary source of Islamic law and moral guidance for Muslims, second only to the Qur'an.

22.    On January 1, 2024, Deputy VASALLO prepared and attempted to submit a memorandum via his chain of command to HCSO Chief Deputy Joseph Maurer seeking religious accommodations that would allow him to pray while at work and another six-month extension of his accommodations for his beard based on his Muslim faith. He further requested to be allowed to keep his beard at its then-current length and an exemption from strict compliance with GEN 117.00. Plaintiff's supervisors at that time, Sergeant Jason Goff and Corporal Daniel Woolley, informed him that a formal request was no longer needed under GEN 117.00 and no further action was taken in response to the request.

7

23.     Based on his deepening studies of the Holy Qur'an and the sunnah (practices) of Prophet Muhammad (peace and blessings be upon him) as described in the Hadith, by early 2024 Plaintiff had reached the sincerely held belief that the religious obligation of Muslim males to grow the beard and trim the mustache meant to not trim his facial hair at all other than the mustache.  Based on the tenets of Islam that allow a Muslim man's beard to  be trimmed in certain cases but only up to a fist-length (approximately four to five inches), Deputy VASALLO began growing his beard out without trimming it while keeping only the mustache trimmed.   Otherwise, he kept his beard clean, brushed and oiled to ensure it looks professional and not unruly.

24.     During the first ten months of 2024, Deputy VASALLO continued to grow his beard out longer than one inch without making any additional formal requests for religious accommodation and without any corrective or disciplinary action taken by HCSO under GEN 117.00.  During this same time, he continued to observe other male Law Enforcement Deputies and even some members of HCSO's command ranks who kept their beards longer than ¼ inch, and, to his knowledge, were not warned, counseled or disciplined for their non-compliance with GEN 117.00.

25.     In early October 2024, Deputy VASALLO had a brief in-person encounter with his direct supervisor, Lieutenant James Dauphin regarding his beard.  Lt. Dauphin warned Plaintiff that his beard was getting too long, and he

needed to trim it.  In response, Deputy VASALLO respectfully advised Lt. Dauphin that he kept his beard for religious reasons as a Muslim and couldn't trim it since Islam did not allow an exception for work policies unless it posed a danger or harm. Lt. Dauphin advised Deputy VASALLO  that he personally had no issues with his religious claims and was only advising Plaintiff because he didn't want him getting in trouble.

26.    Shortly after this exchange, Lieutenant Dauphin privately told Deputy VASALLO that HCSO Command Staff had instructed him to tell Plaintiff to think about what other religious obligations might interfere with his job duties, because they might be asking him about it at some point.  Deputy VASALLO understood this to mean that command staff were evaluating whether his identification as a Muslim itself was compatible with employment at HCSO.  These remarks deeply unsettled VASALLO, as his supervisors and command staff already knew about his Islamic faith and ties to the local Muslim community.  Lt. Dauphin's choice of words and demeanor during their private conversation left little doubt in Plaintiff's mind that he was relaying an implied, if not express threat to stop requesting religious accommodation for his beard, or risk HCSO Command Staff seeking reasons to remove him due to his choice of religion.

27.    In November 2024, Deputy VASALLO emailed Detective Andrew Glassman, the HCSO representative for his assigned district (District V), to see if the Agency would agree to support a proposal at the next quarterly TQM (Team

Quarterly Meeting) to expressly recognize a religious accommodation or exemption for beards longer than ¼ inch. The TQM meeting is a quarterly meeting attended by Command Staff and representatives from each district and division within HCSO and serves as a means of gathering and processing information from line employees, the Executive Staff, and the Sheriff for bettering communications and improving departmental procedures. The final TQM meeting for the year was to be held on December 10, 2024.

28.    To support his request and assist him in answering any questions that might arise about the basis for the proposal, Plaintiff provided Detective Glassman with examples of grooming policies from other agencies around the country where religious exemptions were made for longer beards as well as a brochure from the Council on American-Islamic Relations (CAIR) titled "An Employer's Guide To Islamic Religious Practices," which explained the religious reasons why Muslim men are required by the tenets of Islam to grow their beards.

29.    On the evening of December 14, 2024, Deputy VASALLO was at work in the District V office when Captain Craig Roberts and Major Coleen Handrick both greeted him after the Christmas parade. Neither of them made any remarks about the length of his beard even though it still clearly exceeded ¼ inch at the time.

30.    On December 16, 2024, Detective Glassman advised Deputy VASALLO that when he presented Plaintiff's proposal for a religious exemption to

GEN 117.00 at the TQM meeting, he was advised by the Command Staff that no policy revisions would be considered at that time because there was pending litigation at a different agency regarding a similar issue and they wanted to monitor that case to see how it played out before considering any changes to HCSO's policy. Following the Command Staff's deferral, Plaintiff's proposal for a religious exemption to GEN 117.00 was moved to "Old Business" portion of the TQM Meetings held on March 11, 2025 and June 17, 2025 without further consideration by the Command Staff.

31.    The next day, on December 17, 2024, Deputy VASALLO received a text message from Lieutenant Dauphin in which he again stated that Plaintiff's beard was too long. After Deputy VASALLO reiterated that his beard is part of his religious beliefs and practices as a Muslim., they had a phone conversation during which Plaintiff advised Lt. Dauphin that he planned to grow his beard to at least a fist-length in accordance with Muslim religious tenets. He also acknowledged that if his beard was much longer than a fist-length, it could interfere with his body camera, hinder radio use, or possibly hide his badge or name plate.

32.    During a second call a few days later, Lieutenant Dauphin informed Plaintiff that Captain Roberts and Major Handrick had asked Colonel Michael Hannaford if a religious accommodation could be granted for his beard. Col. Hannaford brought it to the attention of the legal division, and they had deferred to Sheriff CHRONISTER to make a final decision. In the meantime, Lt. Dauphin

told Deputy VASALLO to come to work as scheduled but warned that he might be sent home if not within policy.

33.    On December 23, 2024, Lieutenant Dauphin called Plaintiff via phone to report that Sheriff CHRONISTER would not allow any religious exemptions or accommodations regarding the ¼ beard length restriction imposed by GEN 117.00 and that Deputy VASALLO would therefore need to cut his beard to bring it into compliance or face discipline under HCSO policies.

34.    Plaintiff advised Lieutenant Dauphin that he understood what he had just been told before sending him a text message following the call, in which he informed Lt. Dauphin once again that he would continue to strive to maintain a professional appearance while prioritizing his Islamic faith and growing his beard.

35.    In a subsequent interaction on December 23, 2024, Lieutenant Dauphin advised Deputy VASALLO that per the orders of Colonel Michael Hannaford, Plaintiff was to be written up for every shift he worked if he failed to cut and maintain his beard in strict compliance with the ¼ inch length restrictions of GEN 117.00.  He further informed Plaintiff that, according to HCSO disciplinary policies, if the Command Staff (including Col. Hannaford) chose to proceed, he could be suspended without pay for one day for each write-up and potentially terminated for insubordination due to his continued non-compliance with GEN 117.00 for religious reasons.

36.    The next day, Deputy VASALLO received his first formal write up for violating GEN 117.00 when he was issued an Observation/Coaching Form by Lieutenant Dauphin which stated as follows in the Manager Evaluation section:

> Deputy Vasallo was notified on 12/23/24 that his facial hair was longer than the 1/4 inch length allowed in SOP 117.00. He was instructed to trim his facial hair to the required 1/4 inch length. On 12/24/24 Deputy Vasallo returned to work without any changes to his facial hair. Deputy Vasallo advised that his religious beliefs prevented him from trimming his facial hair to the 1/4 length set in SOP 117.00. Deputy Vasallo respectfully stated that his facial hair needed to be the length of one (1) fist, approximately 4 inches, to fulfill his religious convictions. Deputy Vasallo was reminded that SOP 117.00 specifically stated that religious beliefs were not a reason to have facial hair longer than 1/4 inch. Deputy Vasallo acknowledged that he understood SOP 117.00, but advised he could not violate his religious beliefs by cutting his facial hair. Deputy Vasallo's facial hair is several times longer than allowed by SOP 117.00. This detracts from the uniformity of a Hillsborough County Deputy Sheriff in a uniform position.

37.    In the Employee Acknowledgement section of the Observation/Coaching Form, Deputy VASALLO responded in writing that he understood the policy, valued his role within the agency, and sought to maintain professionalism while practicing his Muslim faith.  He also noted that he would be grateful for an opportunity to further discuss the issue with the decision makers and explore possible accommodations such as an exemption or modification of the policy, to address both his religious needs and HCSO's requirements.

38.    In January 2025, Deputy VASALLO was assigned to work under a new supervisor, Lieutenant Savana Vidal, after which he no longer reported to Lieutenant Dauphin.

39.     During a conversation with Lieutenant Vidal at work on or about March 12, 2025 during the Holy Month of Ramadan, she warned Plaintiff that his beard was longer than allowed by GEN 117.00 and that the Command Staff was getting stricter about enforcing grooming standards.   When Deputy VASALLO politely and respectfully informed her that he kept a beard for religious reasons as a Muslim and could not trim it, Lt. Vidal said that he would be written up if  he did not trim it to ¼ inch by his next shift.

40.     Lt. Vidal made good on her threat the next day when she issued Deputy VASALLO another Observation/Coaching Form with similar comments to the one issued previously by Lt. Dauphin on December 12, 2024.  In response, Plaintiff reiterated his  acknowledgement of GEN 117.00 and told Lt. Vidal that he understood the importance of adhering to HCSO policies and recognized the need to comply with agency standards.  Nevertheless, as a practicing Muslim, he politely and professionally advised Lt. Vidal that he was required by his religious beliefs to maintain a beard that is not trimmed shorter than a fist-length and that compliance with the ¼ inch beard restrictions under GEN 117.00 would conflict with his deeply held religious convictions.  The conversation concluded with Plaintiff expressing hope to Lt. Vidal, as he had previously to Lt. Dauphin,  that he and HCSO could find a solution that respects both his religious practices and the Agency's grooming standards.

41.    In addition to the counselling notices issued by Lt. Dauphin and Lt. Vidal, his current supervisor, Lieutenant Aaron Randall, has been specifically noting the number of days that Plaintiff works each month while he remains in violation of GEN 117.00 during his monthly "check-in." Plaintiff believes HCSO is tracking his days of non-compliance with GEN 117.00 to eventually suspend or terminate him, despite being aware of his Muslim faith and ongoing requests for religious accommodation since his hiring in December 2022.

42.    There are no legitimate non-discriminatory or non-retaliatory reasons for Defendant's continuing refusal to grant Plaintiff's request for a religious accommodation in the form of an exception to GEN 117.00 based on his Islamic faith, or the adverse actions taken against Deputy VASALLO following his protected activity in this case.    The arbitrary nature of GEN 117.00 is further demonstrated by the fact that  the ¼ inch length restriction applicable to "Sworn Male Deputies" such as Plaintiff is expressly waived for "Uniformed and Non-Uniformed Civilian Employees" and exceptions can be made on a case-by-case basis by Division Commanders for Deputies assigned to undercover or other special assignments.

43.    The granting of the requested religious accommodation sought by Plaintiff would pose no undue hardship to Defendant that would "rise to an excessive or unjustifiable level" or otherwise create a substantial burden in the overall context of the law enforcement functions performed by HCSO under the

standards articulated by the United States Supreme Court in *Groff v. DeJoy*, 600 U.S. 447 (2023).

44.    To this day, Plaintiff continues to be denied religious accommodations based on his Islamic faith and is threatened on a regular and recurring basis with additional disciplinary action, up to and including termination, if he chooses his sincerely held religious beliefs as a Muslim over the arbitrary and discriminatory grooming policy of his employer.

## COUNT I

### Title VII Claim for Religious Discrimination
### (Denial of Reasonable Accommodations and Disparate Treatment)

45.    Plaintiff realleges paragraphs 1 through 44 as if fully set forth herein.

46.    The conduct of Defendant more particularly alleged constitutes a violation of Title VII, which makes it an unlawful employment practice for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's religion.

47.    Specifically, Defendant arbitrarily denied VASALLO's request for a reasonable accommodation and exemption to HCSO Policy GEN 117.00 based on his Islamic faith  and additionally subjected him to unwarranted disciplinary actions based on his religious justifications for declining to comply with GEN 117.00.

48.    The denial of reasonable accommodations and other adverse action taken against Plaintiff by Defendant was motivated by Plaintiff's religion (Islam); Defendant did not take similar adverse actions against non-Muslim employees who had committed similar or more serious violations of its policies and procedures, including, but not limited to GEN 117.00.

49.    As a result of Defendant's unlawful conduct in violation of Title VII, Plaintiff VASALLO has suffered compensatory damages, including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff, YARLEY VASALLO, prays that this Court will:

(a)    Declare Defendant's conduct to be in violation of Title VII;

(b)    Enjoin Defendant from further engaging in such conduct;

(c)    Order Defendant to grant Plaintiff's request for an exception to HCSO Policy GEN 117.00 based on his Islamic faith;

(d)    Award Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

(e)    Award Plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. 1988(b), and;

(f)    Grant such other and further relief as may be deemed just and proper.

## COUNT II

### Title VII claim for retaliation

50.    Plaintiff realleges paragraphs 1 through 44 as if fully set forth herein.

51.    The conduct of Defendant more particularly alleged above constitutes a violation of Title VII, 42 U.S.C. 2000e-3, which makes it an unlawful employment practice for an employer to discriminate against any employee based on the employee's opposition to a practice made unlawful by Title VII, or because the employee has participated in the filing of a charge of discrimination with the EEOC.

52.    VASALLO is protected by Title VII based on his requests for religious accommodations, his opposition to what he reasonably believed to be unlawful discrimination and retaliation in the workplace, as well as the fact that he filed an administrative charge of discrimination with the EEOC and participated in the investigation of the charge.

53.    From the time of his hiring by HCSO in December 2022 to the present date, Plaintiff has engaged in virtually continuous protected activity under Title VII based on his repeated requests for reasonable accommodations based on his Islamic faith, his conversations with multiple supervisors regarding the basis of his request for accommodations and the discipline he has received for his non-compliance with GEN 117.00, his open advocacy in support of revising GEN 117.00

to include exemptions for religious or medical reasons and his participation in the administrative process after filing his EEOC Charge in Case No. 511-2025-03331.

54.    As a result of Plaintiff's protected activity under Title VII, Defendant has subjected VASALLO to the continuing arbitrary denial of his request for religious accommodations and unwarranted disciplinary actions for his non-compliance with GEN 117.00.

55.    Plaintiff has suffered compensatory damages from Defendant's unlawful conduct in violation of Title VII, including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff, YARLEY VASALLO, prays that this Court will:

(a)    Declare Defendant's conduct to be in violation of Title VII;

(b)    Enjoin Defendant from further engaging in such conduct;

(c)    Order Defendant to expunge all evidence of retaliation from Plaintiff's personnel records;

(d)    Award Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

(f)    Award Plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. 1988(b), and;

(g)    Grant such other and further relief as may be deemed just and proper.

## COUNT III

### Religious Freedom Under the First Amendment Free Exercise Clause 42 U.S.C. § 1983 and Article I § 3 of the Florida Constitution

56.    Plaintiff realleges paragraphs 1 through 5, 7 and 12 to 44 as if fully set forth herein.

57.    Defendant CHRONISTER's implementation and enforcement of GEN 117.00 violates Plaintiff's right to the free exercise of his religion, in violation of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment; as well as Article I § 3 of the Florida State Constitution and the Florida Religious Freedom Restoration Act of 1998, § 761.01, *et seq*., Fla. Stat.

58.    Defendant CHRONISTER's actions in this matter have unreasonably interfered with the free exercise of Plaintiff's Islamic religious beliefs as guaranteed by the First Amendment.   These actions include Defendant's initial approval and subsequent implementation of GEN 117.00 within HCSO, his policy and practice of denying permission to employees with religious reasons to wear a beard longer than ¼ inch and threatening or taking unwarranted disciplinary action against Sworn Male Deputies like Plaintiff who request religious accommodations or whose non-compliance with GEN 117.00 is based on sincerely held religious beliefs.

59.    No legitimate governmental interest is served, advanced or justified by these practices.  Instead, Defendant's conduct targets religious exercise and violates the federal and Florida constitutional rights to the free exercise of religion.

60.    Defendant CHRONISTER has acted with intent to violate Plaintiff's constitutional rights or with deliberate indifference to his constitutional rights.

61.    By acting under color of state law to deprive Plaintiff of his constitutional rights to the free exercise of his religion under the First Amendment, Defendant CHRONISTER is in violation of 42 U.S.C. § 1983.

62.    As a direct and proximate result of the acts and omissions of Defendant CHRONISTER, and through him of HCSO, Plaintiff's constitutional rights have been violated, and he has suffered injuries and damages as set forth above.

63.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendant CHRONISTER and HCSO are enjoined from enforcing HCSO Policy GEN 117.00 as to Sworn Male Deputies, denying permission to Sworn Male Deputies with sincerely held religious beliefs to wear facial hair longer than ¼ inch and from taking adverse employment actions against Sworn Male Deputies like Plaintiff who refuse to trim or shave their facial hair on religious grounds.

64.    Even a temporary deprivation of Deputy VASALLO's First Amendment right to wear a beard in accordance with his religious beliefs

constitutes irreparable harm. Indeed, where claims of irreparable harm concern violations of First Amendment rights, the Supreme Court has explained that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

WHEREFORE, Plaintiff, YARLEY VASALLO, prays that this Court will:

(a) Declare Defendant's conduct to be in violation of the First Amendment and 42 U.S.C. 1983;

(b) Enjoin Defendant from further engaging in such conduct;

(c) Award Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

(f) Award Plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. 1988(b), and;

(g) Grant such other and further relief as may be deemed just and proper.

## COUNT IV

### Equal Protection Under the Fourteenth Amendment 42 U.S.C. § 1983 and Article I § 3 of the Florida Constitution

65. Plaintiff repeats and realleges paragraphs 1 through 5, 7 and 12 to 44 as if fully set forth herein.

66. Defendant CHRONISTER has discriminated against Plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article I § 3 of the Florida State Constitution.

67.    Defendant has acted with intent to violate Plaintiff's constitutional rights, or with deliberate indifference to his constitutional rights.

68.    As a direct and proximate result of the acts and omissions of Defendant CHRONISTER, and through him of HCSO, Plaintiff's constitutional rights have been violated, and he has suffered injuries and damages as set forth above.

69.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendant is enjoined from enforcing HCSO Policy GEN 117.00 as to Sworn Male Deputies, denying permission to Sworn Male Deputies with sincerely held religious beliefs to wear facial hair longer than ¼ inch and threatening and/or taking adverse employment actions against Sworn Male Deputies trainees who refuse to shave or trim their facial hair on religious grounds.

WHEREFORE, Plaintiff, YARLEY VASALLO, prays that this Court will:

(a)    Declare Defendant's conduct to be in violation of the Fourteenth Amendment right to equal protection and 42 U.S.C. 1983;

(b)    Enjoin Defendant from further engaging in such conduct;

(c)    Award Plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life;

(f)    Award Plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. 1988(b), and;

23

(g)    Grant such other and further relief as may be deemed just and proper.

Respectfully submitted,

*Christopher C. Sharp*
Christopher C. Sharp, Esq.
Fla. Bar No. 996858
E-Mail: csharplaw@aol.com
Secondary Email:  chris@csharplawfirm.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33441
Telephone: (954) 909-4246

*Omar Mustafa Saleh*
Omar Mustafa Saleh, Esq.
Fla. Bar No. 091216
E-mail: osaleh@cair.com
Secondary: saleh@floridalegalconsulting.com
Alina Husain, Esq.
Florida Bar No. 1019558
Email: ahusain@cair.com
COUNCIL ON AMERICAN ISLAMIC RELATIONS
8076 North 56th Street
Tampa, Florida 33167-7620
Phone: (813) 514-1414

Dated: September 10, 2025    Attorneys for Plaintiff

## **VERIFICATION**

I, YARLEY VASALLO, am the Plaintiff in this case and I hereby declare under penalty of perjury under the laws of the United States of America and the State of Florida, including but not limited to, 28 U.S. Code § 1746 and § 837.02, Fla. Stat., that I have reviewed the foregoing Complaint filed on my behalf in this matter and that the factual allegations set forth herein at Paragraphs 12 through 44 are true and correct based on my own personal knowledge.

Executed on September 10, 2025

_____
YARLEY VASALLO, Plaintiff